FILED
2019 Sep-18 PM 02:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| GEORGE C. MOORE, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 2:17-cv-00408-JHE |
| ) | |
| BIRMINGHAM BOARD OF EDUCATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION[1]

Plaintiff George C. Moore, Jr. ("Moore") brings this employment action against his former employer, Birmingham Board of Education ("the Board"). (Docs. 1, 33). Moore asserts claims for sex-based discrimination, race-based discrimination, age-based discrimination, and retaliation pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq.; 42 U.S.C. §§ 1981 & 1983; and the Age Discrimination and Employment Act, 29 U.S.C. §621 et seq. (Doc. 33). The Board has moved for summary judgment, contending there are no disputed issues of material fact and that it is entitled to judgment as a matter of law. (Docs. 50, 51, & 52). Moore opposes the motion. (Docs. 58, 59, & 60). The Board has filed a reply brief in support of its motion. (Doc. 65). The motion for summary judgment is fully briefed and ripe for review. As explained fully below, the Board's motion for summary judgment (doc. 33) is **GRANTED**.

## I. Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 28).

1

to judgment as a matter of law." Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish there is a "genuine issue for trial." *Id.* at 324. (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in Plaintiff's favor when sufficient competent evidence supports Plaintiff's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276-78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of the events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mtn. Park, Ltd. v. Oliver*, 836 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. Summary Judgment Facts

Moore is an African-American male and was over the age of sixty in 2015. (Doc. 60-1 at ¶ 2). He began full-time employment with the Board in 1967, and has been employed in several capacities since then. (*Id.*). Moore has a bachelor's degree and master's degree in Physical Education and holds certifications in Administrative Supervision, Physical Education, and as an Educational Administrator. (*Id.* at ¶3).

In the past,[2] Moore was the athletic director for the Board, and Sherri Huff worked for him as a program specialist. (Doc. 60-1 at ¶ 4). Huff is a white female who is "many years younger than" Moore. (*Id.*). During a reduction in force, the athletic department was eliminated.[3] (*Id.* at ¶ 5). Moore was moved to program specialist in a school, and Huff was moved to a teaching position. (*Id.*). While in this position, Huff was permitted to leave her school position for a portion of the day and return to the central office to perform athletic department functions. (*Id.*). Moore further states the Board issued Huff a cell phone and paid her a $333.00 a month athletic department stipend. (*Id.*; doc. 60-3 at 3-4 (11:1-13:13)).

In 2013 or 2014, when the Board reinstituted the athletic department, Moore applied for the athletic director position. (Doc. 60-1 at ¶ 6). When Moore was not selected for the position, he filed an EEOC complaint in 2014, and, thereafter, entered into a settlement agreement with the Board on December 9, 2014. (*Id.* at ¶ 7). After returning to the EEOC because of a delay in payment, Moore received a settlement check in January or February 2015. (*Id.*).

In May 2015, at the request of then Athletic Director Buck Johnson (doc. 52-5 at 1-3), the position of assistant athletic director and a corresponding salary schedule were approved by the

---

[2] Moore states this fact, but provides no specific dates.
[3] Again, Moore provides no dates for these events.

Board (*id.* at 14). The person appointed to the position would work eleven months (224 days) per year as reflected on the approved salary scheduled. (*Id.*).

In accordance with Alabama Code §16-22-15, the position was posted for fourteen days from June 12, 2015 to June 26, 2015. Individuals interested in a position with the Board, such as the assistant athletic director position, are required to submit their application through SearchSoft, an electronic application system in which an applicant may complete the standard application and indicate specific positions for which he or she would like to be considered. (Doc. 52-8 at ¶ 3). The Board has utilized SearchSoft since 2011. (*Id.*). School systems throughout Alabama utilize SearchSoft for posting job vacancies. (*Id.*).

The Board has produced a document generated by the SearchSoft application system showing applicants for the assistant athletic director position that was posted from June 12, 2015 to June 26, 2015. (Doc. 52-8 at ¶ 4 & pp. 4-5). The printout indicates twenty-seven individuals applied for the position. (*Id.*). Moore's name is not included. (*Id.*). Moore contends he applied for the assistant athletic director position by submitting an application online through SearchSoft on June 26, 2015. (Doc. 60-1 at ¶ 8). Moore produces two email printouts. One is a single page email dated June 26, 2015 with the subject "Standard Application account recovery at Alabama State Department of Education;" however, the body of the email is not shown. (Doc. 60-1 at 7). The second email is page two of two (first page not included) and includes the header "Athletics – Assistant Athletic Director Middle/K-8 Athletics and Activities." (*Id.* at 8). This page contains an anti-discrimination statement, information on the E-Verify program, and a warning about using any of the Board's published data. (*Id.*). SearchSoft will send an email to users informing them if their application is incomplete. (Doc. 52-2 at 10 (38:23-39:15)). Moore states he never received an email from SearchSoft informing him that his application was incomplete. (Doc. 60-1 at ¶ 8).

4

However, an application can be "complete," but not submitted for a particular job. (Doc. 52-2 at 10 (39:16-23)).

After the close of the application process, there was an interview process conducted by a diverse, three-member committee. (Doc. 52-2 at 17 (depo. pp. 66, 70)). After interviews were complete, Johnson forwarded his recommendation of Sherri Huff for the position to the Board's Human Resources Department on July 8, 2015. (Doc. 52-5 at 4). The Board approved Huff's appointment to the position on July 21, 2015. (Doc. 52-6 at 12).

On July 9, 2015, after Johnson had forwarded his recommendation to Human Resources, then-Interim Human Resources Officer Amanda Cross received an email from Moore inquiring about whether his application for the assistant athletic director position had been received. (Doc. 52-5 at 5). Upon receipt of Moore's email, Cross reviewed the applicant pool via SearchSoft (the online application software). (Doc. 52-2 at 19 (73-74); doc. 52-5 at 6). Cross found no evidence that Moore had applied for the position and reported that information to Moore. (*Id.*). Moore responded that his intentions had been to update his application and apply for the assistant athletic director position. (Doc. 52-5 at 6). Moore stated he submitted the application and printed a copy. (*Id.*). Moore did not provide Cross (or the court) with this printed copy he refers to. Moore attests that he has searched for the paper copy that he and his wife printed off on June 26, 2015, but has been unable to locate it. (Doc. 60-1 at ¶ 9). The Board has provided Moore's standard application maintained in the SearchSoft system, which shows an activation date of June 27, 2015. (Doc. 52-1 at 45). Cross testified that she was aware of Moore's 2014 discrimination claim, although she would not have been a part of the settlement negotiations. (Doc. 52-2 at 37 (147:21-148:10)). Moore asserts that the Assistant Athletic Direction position was the first (and only) position Moore applied for since the 2014 EEOC Complaint and settlement with the Board. (Doc. 60-1 at ¶ 8).

5

Cross did not report to anyone that Moore thought he timely applied for the assistant athletic director position. (Doc. 52-2 at 19-20 (74:14-77:9)). Cross testified that, at the time Moore contacted her – July 9, 2015 – a qualified individual had already been selected for the position. (*Id.*). She further testified that the application pool closed on July 26, 2015, interviews had been held, and there was nothing she could do to get Moore into the pool. (*Id.*). When asked if anything prevented the position from being reopened, Cross testified that there was no need to reopen the application pool because there had qualified applicants who timely applied. (*Id.*).

Assuming he had properly applied for the assistant athletic director position, Moore's appointment to the position would have included a reduction in salary. (Doc. 52-2 at 30-32 (118-27)).

**III. Analysis**

Moore contends the Board discriminated against him based on his age, sex, and race when he was not selected for the assistant athletic director position in 2015.[4] He also asserts that the Board's actions were retaliatory in nature.

**A. Failure to Promote – Age Discrimination (ADEA)**

"[A] plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but for' cause of the challenged adverse employment action." *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 180 (2009); *see also Mora v. Jackson Memorial Foundation, Inc.*, 597 F.3d 1201, 1204 (11th Cir. 2010). "The ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that

---

[4] Title VII and § 1981 have the same requirements of proof and use the same analytical framework. *See Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir.1998). Thus, while this opinion expressly discusses the requirements of Title VII, the same analysis applies to Moore's §§ 1981 and 1983 claims.

6

age was the 'reason' that the employer decided to act." *Gross*, 557 U.S. at 176. In *Gross*, the Supreme Court did not "definitely decide" whether the *McDonnell Douglas* framework remains appropriate in ADEA cases. *Id.* n.2. In its cases decided since *Gross*, the Eleventh Circuit has reviewed ADEA claims under *Gross* and *McDonnel Douglas*. Moore's claim fails under either method of analysis.

Applying *Gross*, there is simply no evidence that age was the reason Moore was not selected. In fact, there is no evidence the Board was aware Moore intended to apply for the position when it conducted interviews and selected Huff, and there is also no evidence that the reason proffered for ultimately recommending the successful applicant was a pretext for discrimination based on age.

### B. Failure to Promote – Race and Sex Discrimination (Title VII)

Under Title VII, a plaintiff bears the ultimate burden of proving that the defendant intentionally discriminated against him. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Either by direct or circumstantial evidence, a plaintiff must demonstrate by a preponderance of the evidence that the employer had the requisite intent to discriminate. *Batey v. Stone*, 24 F.3d 1330, 1334 (11th Cir. 1994). Direct evidence is evidence which, if believed, proves the existence of the fact issue without inference or presumption. *Burns v. Gadsden State Community College*, 908 F.2d 1512 (11th Cir. 1990). Evidence that is subject to multiple interpretations or that merely suggests discrimination does not constitute direct evidence. *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997).

Moore has not identified any direct evidence of discrimination, thus his claims are analyzed under the framework for evaluating discrimination claims based on circumstantial evidence. In assessing a failure to promote employment discrimination claim based on circumstantial evidence,

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973), sets forth the analytical framework. Recently, the Eleventh Circuit has provided:

> In a failure-to-promote scenario, a plaintiff may establish a prima facie case of discrimination by showing that: (1) []he was a member of a protected class; (2) []he applied and was qualified for a position for which the employer was accepting applications; (3) despite h[is] qualifications, []he was not promoted; and (4) the position remained open or was filled by another person outside of her protected class. *Trask v. Sec'y, Dept. of Vet. Affairs*, 822 F.3d 1179, 1191 (11th Cir. 2016). If a prima facie case is presented, the burden shifts to the defendant to articulate a race-neutral basis for the employment action at issue; if the defendant carries this light burden, the burden returns to the plaintiff to prove the defendant's stated reason for its conduct is pretext for discrimination. *See Flowers v. Troup Cty., Ga. Sch. Dist.*, 803 F.3d 1327, 1336 (11th Cir. 2015).

*Martin v. Shelby County Board of Education*, 2018 WL26190366, *1, 2 (11th Cir. 2018) (unpublished). The Eleventh Circuit continued:

> A plaintiff can show pretext either by offering evidence that the employer more likely than not acted with a discriminatory motive, or that its proffered reasons are not credible. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010). To do so, the plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Id.* (quotation omitted). A plaintiff usually cannot prove pretext merely by showing that she was more qualified than the person hired. *Springer v. Convergys Customer Mgmt. Grp. Inc*., 509 F.3d 1344, 1349 (11th Cir. 2007). "[A] plaintiff must show that the disparities between the successful applicant's and h[er] own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Id*. That's because a court does not "sit as a super-personnel department." *Chapman v. AI Transp*., 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc) (quotation omitted). To be clear, a reason is not pretext "unless it is shown both that the reason was false, and that discrimination was the real reason." *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala*., 446 F.3d 1160, 1163 (11th Cir. 2006) (quotation omitted; emphases in original).
>
> As an alternative to the burden-shifting framework, a plaintiff may show that the evidence, viewed in the light most favorable to her, "presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed Martin Corp*., 644 F.3d 1321, 1328 (11th Cir. 2011) (footnote omitted). Either way, if the circumstantial evidence is sufficient to raise a reasonable inference that the employer discriminated against the plaintiff, summary judgment is improper. *Chapter 7 Tr.*

> *v. Gate Gourmet, Inc*., 683 F.3d 1249, 1256 (11th Cir. 2012). In all cases, a plaintiff retains the ultimate burden of persuading the court that she has been the victim of intentional discrimination. *Flowers*, 803 F.3d at 1336.

*Martin*, 2018 WL 26190366, at *2.

Moore contends he has established a *prima facie* case of sex, race, and age discrimination related to his failure to promote claim. (Doc. 58 at 16). Specifically, Moore contends (1) he is a member of a protected group (i.e., an African American male over forty); (2) he was qualified and applied for the promotion; (3) he was rejected for the position; and (4) a similarly situated employee who was not part of the protected group received the promotion instead. (*Id.* at 16-17).

The evidence does not demonstrate that (or create a genuine issue of material fact as to whether) Moore applied for the position. To the contrary, the evidence shows that the first time any Board official learned Moore was interested in the assistant athletic director position was on July 9, 2015, when Moore emailed HR Officer Cross. By that time, the application period had ended, interviews had been conducted, and Johnson had notified Cross of the committee's recommendation to select Huff. During Cross's investigation, she accessed the SearchSoft online application system, which revealed a pool of twenty-seven applicants that did not include Moore. Thus, to the Board's knowledge, Moore did not apply for the position. Furthermore, Moore has provided no documentary evidence that he timely applied for the position. Although Moore attests he applied and printed off a paper copy on June 26, 2015, he states he now cannot locate it. The Board has provided Moore's standard application maintained in the SearchSoft system, which shows an activation date of June 27, 2015 – the day *after* the assistant athletic director application period closed. (Doc. 52-1 at 45). *See Whitehead v. Burnside*, 403 Fed. Appx. 401, 403 (11th Cir. 2010) (holding that the district court properly applied the summary judgment standard and found no question of fact when the plaintiff offered his own sworn statement, but contemporaneous

9

medical records showed his testimony to be baseless); *see also Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990) (recognizing self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records.). The email print outs Moore provides do not support his assertion that he timely applied for the position.[5] To the contrary, these printouts match the "Applicant Status History" the Board has provided. (Doc. 52-6 at 62). This shows user "gmoore2" made a change on June 26, 2015, with "old" being "expired" and the "new" being "incomplete." (*Id.*). The next day, on June 27, 2015, "gmoore2" made another change, with the "old" being "incomplete" and the "new" being "new." (*Id.*). Thus, SearchSoft records reflect that Moore accessed his application account on both June 26, 2015 and June 27, 2015, but that no application was completed or submitted on June 26, 2015. (*Id.*). The June 27, 2015 record matches the updated application the Board submitted.

To the extent Moore argues that, upon learning he intended to apply for the position, Cross should have taken some action, his argument is without merit. Upon learning that Moore intended to apply for the assistant athletic director position, Cross examined the SearchSoft system and, discussing her findings with Moore, determined that he had not properly filed an application for the position because there was no evidence in the system he had done so. Moore offers nothing other than speculation that Cross did something wrong when she did not reopen the application process or alert someone else to do so. There is no evidence Cross acted on the basis of any unlawful motive or that she failed to act at the behest of anyone with unlawful motives.

---

[5] One is a single page email dated June 26, 2015 with the subject "Standard Application account recovery at Alabama State Department of Education;" however, the body of the email is not shown. (Doc. 60-1 at 7). The second email is page two of two (first page not included) and includes the header "Athletics – Assistant Athletic Director Middle/K-8 Athletics and Activities." (*Id.* at 8). This page contains an anti-discrimination statement, information on the E-Verify program, and a warning about using any of the Board's published data. (*Id.*).

10

Furthermore, there is no evidence Moore actually requested the application process be reopened. Cross testified that an application cycle is only reopened by exception, and then only when the initial posting produces a field of unqualified or otherwise unacceptable candidates. (Doc. 52-2 at 9-10). Although Moore asserts he was "more qualified" for the position, he does not contend that Huff was not qualified. Simply put, there is no evidence that the application cycle should have been reopened, but was not reopened because of Moore's sex, race, or age.

Moore's offering of the declaration of Alfonso "Buck" Johnson (doc. 60-4) does not resuscitate his failure to promote claim. Johnson attests that if he had known Moore had applied or expressed interest in the assistant athletic director position, he would have "insisted that his application be considered." (*Id.* at ¶ 4). What this statement fails to address is the fact that there is no evidence Moore timely applied or expressed interest in the position. Additionally, there is no attestation that, had Johnson known of Moore's belated interest in the position, it would have been reopened and he would have been chosen instead of Huff.

Even if Moore could establish a *prima facie* case of discrimination (which he cannot), his failure to promote claims would fail because he cannot establish the reason proffered for ultimately recommending Huff was false and that discrimination was the real reason for her selection.

### C. Constructive Discharge

Moore also asserts a claim for constructive discharge. "To state a claim for constructive discharge, a plaintiff must demonstrate that working conditions were 'so intolerable that a reasonable person in [his] position would have been compelled to resign.'" *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1203, 1231 (11th Cir. 2001) (quoting *Poole v. Cntry. Club of Columbus, Inc.*, 129 F.2d 551, 553 (11th Cir. 1997)). Moore's contentions can be characterized as him being embarrassed that he did not receive a position in the athletic department. This is hardly

11

constructive discharge. Moore's conclusory assertion that he was "blackballed as an older African-American man" (doc. 58 at 21) is without support in the record. Although Moore asserts he was "exiled" and "humiliated," the evidence merely shows that Moore was not selected to a position that the decisionmakers were unaware he applied for when they conducted interviews and made a recommendation. There is simply no evidence of intolerable work conditions that is required to support a constructive discharge claim.

### D. Retaliation

Moore also contends he was denied the assistant athletic director position because of his previous EEOC Charge. To establish a prima facie case of retaliation, a plaintiff must show that: (1) he engaged in protected activity or expression; (2) he suffered an adverse employment action; and (3) the adverse employment action was causally connected to the protected conduct. *Sims v. Burlington Coat Factory Warehouse of Alabama, Inc*., 330 Fed. Appx. 795, 804 (11th Cir. 2009) (citations omitted). If a plaintiff establishes a prima facie case of retaliation, the burden then shifts to the defendant to articulate legitimate, non-retaliatory reasons for the alleged acts. *See Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997). Once the defendant articulates such a reason or reasons, the plaintiff must show that the proffered reasons are a pretext for retaliation. *Id.*

"Title VII retaliation claims must be proved according to the traditional principles of but-for causation," requiring "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, --- U.S. ---, 133 S. Ct. 2517 (2013). To establish a "but-for" causal connection, a plaintiff must prove that "the desire to retaliate was the 'but-for' cause of the challenged employment action." *Id.* at 2528.

Assuming for purposes of summary judgment that being denied the assistant athletic

director position was an adverse employment action, Moore cannot establish that the denial was causally connected to any protected activity or expression. Moore cites the filling of his EEOC Charge on April 1, 2014, relating to the appointment of Buck Johnson as athletic director as the protected activity. (Doc. 52-1 at 20 (77:12-78:18); doc. 52-8 at 8). More than a year elapsed before the assistant athletic director position was posted and filled in July 2015. The Eleventh Circuit routinely holds much shorter time periods to be too remote to support causation. *Thomas v. CVS/Pharmacy*, 336 Fed. Appx. 913, 915 (11th Cir. 2009) (per curium) (three-and-a-half months too remote to infer causation); *Wallace v. Ga. Dept. of Transp.*, 212 Fed. Appx. 799 (11th Cir. 2006) (seven months too remote); *Hidgon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (three months passing between decisionmaker's awareness of protected expression and the adverse action meant plaintiff could not establish a causal connection); *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361 (11th Cir. 2007) (finding no causation when three months elapsed between complaints of harassment and termination).

Furthermore, Moore's reliance on *Minnifield v. City of Birmingham*, 325 F.R.D. 450, 468 (N.D. Ala. 2018) to support the causal connection element is misplaced. Unlike the plaintiff in *Minnifield*, Moore has not presented a "convincing mosaic" of evidence in support of his retaliation claim and has not rebutted the Board's legitimate, nondiscriminatory/nonretaliatory reasons for not selecting Moore. Simply put, Moore cannot show that retaliation was the "but for" cause for him not receiving the assistant athletic director position. *See Univ. of Tex. Sw. Med. Cr. v. Nassar*, -- U.S. --, 133 S. Ct. 2517 (2013). To the contrary, as articulated above, the evidence establishes that the decisionmakers were not aware of Moore's desire to apply for the position at the time they conducted interviews and made the selection. Accordingly, the Board is due summary judgment on Moore's retaliation claim.

13

## IV. Conclusion

Finding no genuine issue of material fact, Defendant Birmingham Board of Education is entitled to judgment as a matter of law. The Board's motion for summary judgment (doc. 33) is **GRANTED**. A separate order will be entered.

DONE this 18th day of September, 2019.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE